## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**BIOMEDCRAFT DESIGNS, INC.**

    *Plaintiff,*

**v.**

**KARL STORZ ENDOSCOPY-AMERICA, INC. and KARL STORZ SE & CO. KG,**

    *Defendants.*

Civil Action No.   **4:20-cv-679**

**JURY TRIAL DEMANDED**

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Biomedcraft Designs, Inc. ("Biomedcraft") files this Original Complaint for Patent Infringement against Defendants Karl Storz Endoscopy-America, Inc. ("Karl Storz America") and Karl Storz SE & Co. KG ("Karl Storz Germany") (individually or together, "Karl Storz").

### PARTIES

1.    Biomedcraft is a California corporation having a principal place of business at 24187 Wabern Dr., Crestline, CA 92325.

2.    On information and belief, Karl Storz America is a California corporation having a principal place of business at 2151 E. Grand Avenue, El Segundo, CA 90245, is registered to do business in Texas, and may be served with process through its registered agent having an address of 3610-2 N. Josey Lane, Suite 223, Carrollton, TX 75007.

3.    On information and belief, Karl Storz Germany is a foreign entity organized in Germany with its principal place of business at Dr. Karl-Storz-Straβe 34, 78532 Tuttlingen,

Germany.

4.      On information and belief, Karl Storz Germany is the parent company of Karl Storz America. At all times relevant herein, Karl Storz Germany was engaged in the business of designing, manufacturing, marketing, testing, promoting, selling, importing, exporting, and/or distributing the Accused Instrumentalities discussed herein in the United States of America, including the State of Texas.

## JURISDICTION AND VENUE

5.      Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over these claims pursuant to, and without limitation, 28 U.S.C. §§ 1331, 1338, 1367, 2201, 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

7.      This Court has personal jurisdiction over Karl Storz because both Karl Storz America and Karl Storz Germany conduct and/or benefit from systematic and continuous business in Texas.

8.      At all times relevant herein, Karl Storz America was engaged in the business of manufacturing, marketing, testing, promoting, selling, importing, exporting, and/or distributing the Accused Instrumentalities discussed herein in the State of Texas.

9.      Karl Storz America is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Karl Storz America's substantial business in Texas and this District including but not limited to: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods

and services provided to individuals in the State of Texas and in this District.

10.     At all times relevant herein, Karl Storz Germany was engaged in the business of designing, manufacturing, marketing, testing, promoting, selling, importing, exporting, and/or distributing the Accused Instrumentalities discussed herein in the State of Texas.

11.     Karl Storz Germany is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Karl Storz Germany's substantial business in Texas and this District including but not limited to: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District.

## BACKGROUND

12.     Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

13.     Biomedcraft was formed in 2005 by Dr. Dale Rice and Dr. Lex Sensenbrenner to develop and commercialize a surgical device that would greatly improve the safety of surgery in the sinuses and other regions.

14.     Based on their combined experience of over 30 years, Dr. Rice and Dr. Sensenbrenner realized that a surgical tool that could assist with coagulation and suction was not available. Dr. Rice and Dr. Sensenbrenner directly witnessed the complications and risks patients had to endure because of the failure of medical device manufacturers to recognize the need for a coagulation and suction tool to address those complications and risks.

15.     Dr. Rice and Dr. Sensenbrenner recognized that such a tool would help to reduce complications and risks that can result from surgery in, for example, the nasosinal regions. For

example, nasosinal regions are particularly sensitive to bleeding, and many patients suffered complications and even died due to those complications.

16.     Dr. Rice and Dr. Sensenbrenner recognized that the potentially fatal problems resulting from the lack of a coagulation and suction tool could be solved by technical advances and innovations that were ultimately embodied in U.S. Patent No. 8,187,272 ("the '272 Patent") (**Ex. 1**).

17.     Dr. Rice and Dr. Sensenbrenner assigned all of their rights in the '272 Patent to Biomedcraft.

18.     The '272 Patent claims priority to a patent application filed by Biomedcraft on October 6, 2006.

19.     Markus Simmen of Karl Storz was specifically interested in seeing the highly confidential and proprietary information contained within and relating to the patent application (prior to publication) which ultimately matured into the '272 Patent. For example, on or around October 13, 2006, Mr. Simmen stated that "at a minimum [I] need the patent as PDF that the 'know how' is secured." In addition to providing at least some of the material from the patent application, Biomedcraft provided a working prototype of Dr. Rice and Dr. Sensenbrenner's invention ("Prototype").

20.     On or around February 21, 2007, Biomedcraft contacted Karl Storz, which had not responded to Biomedcraft after seeing Biomedcraft's highly confidential and proprietary materials relating to the technologies described in the patent application leading to the '272 Patent. Biomedcraft believed it was unusual and grew suspicious that Karl Storz did not even want to meet to discuss Biomedcraft's plans to commercialize or otherwise further develop Dr. Rice and Dr. Sensenbrenner's innovations.

21.     On or around February 26, 2007, Mr. Simmen finally responded to Biomedcraft with an offer to meet. While the subsequent meetings were aimed to give the appearance that Karl Storz was interested in jointly working with Biomedcraft, Biomedcraft came to believe that the true intention of Karl Storz was to further learn and misappropriate technology belonging to Biomedcraft.

22.     On or around March 7, 2008, Karl Storz informed Dr. Rice that it intended to file its own patent application, but that it would still name Dr. Rice and Dr. Sensenbrenner as inventors. But before then, on or around January 31, 2008, Karl Storz, unbeknownst to Biomedcraft, filed German Patent Application No. 10 2008 006 880.2 ("the '880 Application").

23.     On or around May 1, 2008, Karl Storz notified Biomedcraft that it only named Dr. Rice as an inventor on the '880 Application.

24.     But in reality, instead of naming the true inventors of the technology and inventions contained in the '880 Application – namely, Dr. Rice and Dr. Sensenbrenner, or even Dr. Rice as Karl Storz had previously stated it would name – Karl Storz named Uwe Bacher and Rainer Hermle as inventors.

25.     On or around June 26, 2008, Karl Storz sent a draft of a product development and license agreement to Biomedcraft.

26.     On or around August 28, 2008, Karl Storz acknowledged that the materials that were being provided by Biomedcraft were to be treated as confidential.

27.     Karl Storz also filed PCT Application No. PCT/EP2009/000344 on January 21, 2009 and U.S. Patent Application No. 12/847,551 on July 30, 2010 (which application issued as U.S. Patent No. 8,231,622 ("the '622 Patent") (**Ex. 2**), which both applications claimed priority to the '880 Application.

28.     The attached claim chart (**Ex. 2-A**) shows that every element of, for example, claim 1 of the '622 Patent is found in the disclosure of the '272 Patent, demonstrating that Karl Storz misappropriated the materials that were disclosed to it by Biomedcraft and then committed fraud on the U.S. Patent and Trademark Office ("USPTO") by (i) failing to disclose the '272 Patent during the prosecution of the '622 Patent and (ii) failing to disclose that Dr. Rice and Dr. Sensenbrenner were the actual inventors of the inventions claimed in the '622 Patent.

29.     On or around May 8, 2008, prior to issuance of the '622 Patent, Dr. Rice notified Karl Storz that its application underlying the '622 Patent was substantively identical to Biomedcraft's patent application underlying the '272 Patent.

30.     Despite receiving Dr. Rice's notice, Karl Storz never disclosed the '272 Patent to the USPTO during the prosecution of Karl Storz's subsequently-filed U.S. application that issued as the '622 Patent and which application incorporated the Biomedcraft materials from the '272 Patent that Biomedcraft disclosed to Karl Storz.

31.     As Karl Storz continued to interact with Biomedcraft, allegedly for the purpose of finalizing an agreement, Karl Storz on June 16, 2009 filed a second German patent application, No. 10 2009 025 405.6 ("the '405 Application"), and again intentionally omitted Dr. Rice and Dr. Sensenbrenner as inventors. **Ex. 3.**

32.     Karl Storz terminated discussions with Biomedcraft after Karl Storz filed its '405 Application by failing to respond to all attempts by Biomedcraft for further discussion and information.

33.     Subsequently, Karl Storz on June 16, 2010 filed U.S. Patent Application No. 12/816,810 ("the '810 Application") and again intentionally failed to identify Dr. Rice and Dr. Sensenbrenner as inventors. On March 10, 2015, the '810 Application issued as U.S. Patent No.

8,974,455 ("the '455 Patent") (**Ex. 4**).

34.　Karl Storz also on January 30, 2015 filed continuation-in-part U.S. Patent Application No. 14/610,314, which issued as U.S. Patent No. 10,299,855 ("the '855 Patent") (**Ex. 5**) on May 28, 2019.

35.　The attached claim charts (**Exs. 4-A, 5-A**) show every element of, for example, claim 1 of the '455 Patent and every element of, for example, claim 1 of the '855 Patent are found in the disclosure of the '272 Patent, demonstrating that Karl Storz misappropriated the materials and technology that were disclosed to it by Biomedcraft and then committed fraud on the USPTO by failing to disclose that Dr. Rice and Dr. Sensenbrenner were the actual inventors of the inventions claimed in the '455 and '855 Patents.

36.　As further discussed below and as shown in **Ex. 1-A**, Karl Storz began intentionally infringing the claims of the '272 Patent at least as early as in 2014.

## COUNT I

### KARL STORZ'S INFRINGEMENT OF U.S. PATENT NO. 8,187,272
### (35 U.S.C. § 271)

33.　Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

34.　Biomedcraft owns, by assignment, the '272 Patent entitled "Surgical Instrument for Coagulation and Suction." A true and correct copy of the '272 Patent is attached hereto as **Ex. 1**. The '272 Patent claims priority to a filing date of October 6, 2006 and issued on May 29, 2012. The '272 Patent is valid and enforceable and was duly issued by the USPTO.

35.　There is an actual and justiciable controversy between the parties arising under the Patent Act, 35 U.S.C. § 1, *et seq*. concerning Karl Storz's infringement of one or more claims of the '272 Patent.

36.     Karl Storz, in violation of 35 U.S.C. § 271, has infringed, literally and/or under the doctrine of equivalents, and continues to infringe the '272 Patent through Karl Storz's making, using, selling, and/or offering for sale in the United States, and specifically in this District, bipolar suction systems and devices that fall within the claims of the '272 Patent.

37.     Karl Storz has directly infringed at least claim 1 of the '272 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale complete bipolar suction device assemblies incorporating, for example, "BRINER" suction devices. Further, for example, Karl Storz's website lists a number of different bipolar suction devices. *See* **Ex. 6**. Such Karl Storz bipolar suction devices, including any and all devices referred to in the accompanying claim chart (**Ex. 1-A**), are hereby accused of infringing the '272 Patent (collectively, "the Accused Instrumentalities").

38.     Karl Storz has had actual notice of the '272 Patent (and/or the scope of its underlying application) since at least as early as its receipt of the Biomedcraft patent application and/or the application's publication in 2008 and no later than when the '272 Patent issued.

39.     Karl Storz has indirectly infringed at least claim 1 of the '272 Patent under 35 U.S.C. § 271(b), literally and/or under the doctrine of equivalents, by actively, knowingly, and intentionally inducing infringement of the '272 Patent by others (*e.g.*, Karl Storz's customers, distributors, partners, and/or third parties).

40.     Karl Storz's infringement of the '272 Patent has been and continues to be willful.

41.     As a direct and proximate result of Karl Storz's infringement of the '272 Patent, Biomedcraft has been and continues to be damaged in an amount yet to be determined.

42.     Karl Storz has continued and will continue to infringe one or more claims of the '272 Patent unless enjoined by this Court.

43.    Unless Karl Storz's ongoing infringement is enjoined, Biomedcraft will suffer irreparable injury for which there is no adequate remedy at law.

44.    This is an exceptional case such that Biomedcraft should be entitled to its reasonable attorneys' fees and expenses incurred in prosecuting this action and defending any declaratory judgment requests or counterclaims brought by Karl Storz.

## COUNT II

### DECLARATORY JUDGMENT –
### CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 8,231,622
### (35 U.S.C. § 256; 28 U.S.C. § 2201)

45.    Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

46.    The '622 Patent (**Ex. 2**) contains at least one claim directed to a bipolar coagulation instrument as shown and described in the figures of the '622 Patent.

47.    Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially contributed to at least one claim limitation in the claims of the '622 Patent – *e.g.*, a hollow shaft configured as a suction and/or flushing tube and having two electrically insulated electrodes that are opposite one another and extend beyond a distal end of the shaft.

48.    Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the invention of the '622 Patent is definite and significant when viewed in light of the full invention.

49.    The '622 Patent does not list Dr. Rice or Dr. Sensenbrenner as inventor.

50.    Dr. Rice and Dr. Sensenbrenner are rightfully inventors of the invention(s) claimed in the '622 Patent.

51.    As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy between Biomedcraft and Karl Storz regarding inventorship of the

'622 Patent.

52.     Biomedcraft respectfully requests that this Court enter judgment declaring that Dr. Rice and Dr. Sensenbrenner are inventors of the '622 Patent and directing the Director of the USPTO to correct the inventorship listed on the '622 Patent to reflect Dr. Rice and Dr. Sensenbrenner as inventors.

## COUNT III

### DECLARATORY JUDGMENT – OWNERSHIP OF U.S. PATENT NO. 8,231,622
### (28 U.S.C. § 2201)

53.     Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

54.     In view of the dispute between Biomedcraft and Karl Storz regarding inventorship of the '622 Patent, there exists a substantial and continuing justiciable controversy between Biomedcraft and Karl Storz regarding ownership of the '622 Patent.

55.     Karl Storz obtained valuable rights in the '622 Patent at the expense and to the detriment of Biomedcraft. Unless ownership of the '622 Patent is revised to include Biomedcraft as at least a co-owner of the '622 Patent, Karl Storz will continue to exploit the '622 Patent in a manner depriving Biomedcraft of its rightful interest in the '622 Patent.

56.     Biomedcraft has not assigned its rights in the '622 Patent.

57.     Biomedcraft respectfully requests that this Court enter judgment declaring that Biomedcraft is at least a co-owner of the '622 Patent and revising ownership of the '622 Patent to reflect Biomedcraft's ownership of the '622 Patent.

## COUNT IV

### DECLARATORY JUDGMENT –
### CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 8,974,455
### (35 U.S.C. § 256; 28 U.S.C. § 2201)

58.     Biomedcraft incorporates by reference the preceding paragraphs of Harmer's Counterclaims as though fully set forth herein.

59.     The '455 Patent (**Ex. 4**) contains at least one claim directed to a medical coagulation device as shown and described in the figures of the '455 Patent.

60.     Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially contributed to at least one feature shown in one or more of the figures of the '455 Patent – *e.g.*, a shaft, and two electrode tips extending beyond a distal end of the shaft, at least one of said two electrode tips widening in the distal direction.

61.     Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the invention of the '455 Patent is definite and significant when viewed in light of the full invention.

62.     The '455 Patent does not list Dr. Rice and Dr. Sensenbrenner as inventors.

63.     Dr. Rice and Dr. Sensenbrenner are rightfully inventors of the invention(s) claimed in the '455 Patent.

64.     As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy between Biomedcraft and Storz regarding inventorship of the '455 Patent.

65.     Biomedcraft respectfully requests that this Court enter judgment declaring that Dr. Rice and Dr. Sensenbrenner are inventors of the '455 Patent and directing the Director of the USPTO to correct the inventorship listed on the '455 Patent to reflect Dr. Rice and Dr. Sensenbrenner as inventors.

## COUNT V

### DECLARATORY JUDGMENT – OWNERSHIP OF U.S. PATENT NO. 8,974,455
### (28 U.S.C. § 2201)

66.     Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

67.     In view of the dispute between Biomedcraft and Karl Storz regarding inventorship of the '455 Patent, there exists a substantial and continuing justiciable controversy between Biomedcraft and Karl Storz regarding ownership of the '455 Patent.

68.     Karl Storz obtained valuable rights in the '455 Patent at the expense and to the detriment of Biomedcraft. Unless ownership of the '455 Patent is revised to include Biomedcraft as at least a co-owner of the '455 Patent, Karl Storz will continue to exploit the '455 Patent in a manner depriving Biomedcraft of its rightful interest in the '455 Patent.

69.     Biomedcraft has not assigned its rights in the '455 Patent.

70.     Biomedcraft respectfully requests that this Court enter judgment declaring that Biomedcraft is at least a co-owner of the '455 Patent and revising ownership of the '455 Patent to reflect Biomedcraft's ownership of the '455 Patent.

## COUNT VI

### DECLARATORY JUDGMENT –
### CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,299,855
### (35 U.S.C. § 256; 28 U.S.C. § 2201)

71.     Biomedcraft incorporates by reference the preceding paragraphs of Harmer's Counterclaims as though fully set forth herein.

72.     The '855 Patent (**Ex. 5**) contains at least one claim directed to a medical coagulation device as shown and described in the figures of the '855 Patent.

73.     Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially

contributed to at least one feature shown in one or more of the figures of the '855 Patent – *e.g.*, a shaft, and a conductive section of said shaft, said conductive section of said shaft extending along a length of said shaft.

74.    Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the invention of the '855 Patent is definite and significant when viewed in light of the full invention.

75.    The '855 Patent does not list Dr. Rice and Dr. Sensenbrenner as inventors.

76.    Dr. Rice and Dr. Sensenbrenner are rightfully inventors of the invention(s) claimed in the '855 Patent.

77.    As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy between Biomedcraft and Karl Storz regarding inventorship of the '855 Patent.

78.    Biomedcraft respectfully requests that this Court enter judgment declaring that Dr. Rice and Dr. Sensenbrenner are inventors of the '855 Patent and directing the Director of the USPTO to correct the inventorship listed on the '855 Patent to reflect Dr. Rice and Dr. Sensenbrenner as inventors.

## <u>COUNT VII</u>

## **DECLARATORY JUDGMENT – OWNERSHIP OF U.S. PATENT NO. 10,299,855**
## **(28 U.S.C. § 2201)**

79.    Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

80.    In view of the dispute between Biomedcraft and Karl Storz regarding inventorship of the '855 Patent, there exists a substantial and continuing justiciable controversy between Biomedcraft and Karl Storz regarding ownership of the '855 Patent.

81.    Karl Storz obtained valuable rights in the '855 Patent at the expense and to the

detriment of Biomedcraft. Unless ownership of the '855 Patent is revised to include Biomedcraft as at least a co-owner of the '855 Patent, Karl Storz will continue to exploit the '855 Patent in a manner depriving Biomedcraft of its rightful interest in the '855 Patent.

82.     Biomedcraft has not assigned its rights in the '855 Patent.

83.     Biomedcraft respectfully requests that this Court enter judgment declaring that Biomedcraft is at least a co-owner of the '855 Patent and revising ownership of the '855 Patent to reflect Biomedcraft's ownership of the '855 Patent.

## COUNT VIII

**IN THE ALTERNATIVE, DECLARATORY JUDGMENT –
UNENFORCEABILITY OF U.S. PATENT NOS. 8,231,622, 8,974,455, AND 10,299,855
DUE TO INEQUITABLE CONDUCT
(28 U.S.C. § 2201)**

84.     Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

85.     Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially contributed to at least one claim limitation of the '622 Patent – *e.g.*, a hollow shaft configured as a suction and/or flushing tube and having two electrically insulated electrodes that are opposite one another and extend beyond a distal end of the shaft.

86.     Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the invention in the '622 Patent is definite and significant when viewed in light of the full invention.

87.     Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially contributed to at least one limitation of the claims of the '455 Patent – *e.g.*, a shaft, and two electrode tips extending beyond a distal end of the shaft, at least one of said two electrode tips widening in the distal direction.

88.     Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the

invention in the '455 Patent is definite and significant when viewed in light of the full invention.

89.     Dr. Rice and Dr. Sensenbrenner were involved in the conception and materially contributed to at least one limitation of the claims of the '855 Patent – *e.g.*, a shaft, and a conductive section of said shaft, said conductive section of said shaft extending along a length of said shaft.

90.     Each of Dr. Rice and Dr. Sensenbrenner's contributions to the conception of the invention in the '855 Patent is definite and significant when viewed in light of the full invention.

91.     During proceedings before the USPTO, at least Karl Storz failed to identify (or failed to cause to be identified) to the USPTO Dr. Rice and Dr. Sensenbrenner as inventors on the applications that matured into the '622, '455, and/or '855 Patents.

92.     Karl Storz materially omitted (or caused to omit by act or omission, including through its prosecution counsel) Dr. Rice and Dr. Sensenbrenner as inventors on the '622, '455, and '855 Patents with intent to deceive the USPTO, for the purpose of alleging, to the exclusion of Dr. Rice, Dr. Sensenbrenner, and Biomedcraft, Karl Storz as sole assignee and owner of the '622, '455, and '855 Patents.

93.     Karl Storz's failure to disclose Dr. Rice and Dr. Sensenbrenner as inventors was material in that had the USPTO known that the applications which matured into the '622, '455, and '855 Patents listed incorrect inventorship, one or more the applications underlying those patents would have been rejected.

94.     During proceedings before the USPTO, at least Karl Storz failed to identify (or failed to cause to be identified) to the USPTO Biomedcraft's Prototype corresponding to the limitations of the claims of the '622, '455, and '855 Patents.

95.     Karl Storz's failure to disclose the Prototype was material in that had the USPTO

- 15 -

known of the Prototype during examination of the applications that matured into the '622, '455, and '855 Patents, those applications would have been rejected.

96.     Further, as a result of correspondence and discussions in 2008 between Biomedcraft and Karl Storz regarding Dr. Rice and Dr. Sensenbrenner's inventive contributions, Karl Storz was aware of and failed to identify to the USPTO Dr. Rice and Dr. Sensenbrenner as inventors on at least the applications which matured into the '622, '455, and '855 Patents, which each issued after Karl Storz and Biomedcraft first discussed Dr. Rice and Dr. Sensenbrenner's inventive contributions.

97.     Accordingly, Biomedcraft respectfully requests that this Court, in the alternative should it not declare Dr. Rice and Dr. Sensenbrenner at least as co-inventors and Biomedcraft as at least co-owner of the '622, '455, and '855 Patents, enter judgment declaring that the '622, '455, and '855 Patents are unenforceable due to inequitable conduct.

## COUNT IX

### IN THE ALTERNATIVE, DECLARATORY JUDGMENT – INVALIDITY OF U.S. PATENT NOS. 8,231,622, 8,974,455, AND 10,299,855 DUE TO ANTICIPATION OR OBVIOUSNESS (28 U.S.C. § 2201)

98.     Biomedcraft incorporates by reference the preceding paragraphs as though fully set forth herein.

99.     Dr. Rice and Dr. Sensenbrenner were solely involved in the conception and reduction to practice of the ideas and Prototype corresponding to the claim limitations of the '622 Patent – *e.g.*, a hollow shaft configured as a suction and/or flushing tube and having two electrically insulated electrodes that are opposite one another and extend beyond a distal end of the shaft.

100.     As least in view that one or more claims of the '622 Patent are disclosed in the

disclosure of the '272 Patent (*see* **Ex. 2-A**), the '272 Patent anticipates and/or renders obvious those claims of the '622 Patent.

101.    Dr. Rice and Dr. Sensenbrenner were solely involved in the conception and reduction to practice of the ideas and Prototype corresponding to the claim limitations of the '455 Patent – *e.g.*, a shaft, and two electrode tips extending beyond a distal end of the shaft, at least one of said two electrode tips widening in the distal direction.

102.    As least in view that one or more claims of the '455 Patent are disclosed in the disclosure of the '272 Patent (*see* **Ex. 4-A**), the '272 Patent anticipates and/or renders obvious those claims of the '455 Patent.

103.    Dr. Rice and Dr. Sensenbrenner were solely involved in the conception and reduction to practice of the ideas and Prototype corresponding to the claim limitations of the '855 Patent – *e.g.*, a shaft, and a conductive section of said shaft, said conductive section of said shaft extending along a length of said shaft.

104.    As least in view that one or more claims of the '855 Patent are disclosed in the disclosure of the '272 Patent (*see* **Ex. 5-A**), the '272 Patent anticipates and/or renders obvious those claims of the '855 Patent.

105.    During proceedings before the USPTO, at least Karl Storz failed to identify (or failed to cause to be identified) to the USPTO the Prototype corresponding to the limitations of the claims of the '622, '455, and '855 Patents.

106.    Karl Storz's failure to disclose the Prototype was material in that had the USPTO known of the Prototype during examination of the applications that matured into the '622, '455, and '855 Patents, those applications would have been rejected.

107.    Accordingly, Biomedcraft respectfully requests that this Court, in the alternative

should it not declare Dr. Rice and Dr. Sensenbrenner at least as co-inventors and Biomedcraft as

co-owner of the '622, '455, and '855 Patents, enter judgment declaring that the '622, '455, and

'855 Patents are invalid due to anticipation or obviousness in view of the Prototype and/or the

'272 Patent.

## COUNT X

### Fraud

108.    Biomedcraft incorporates by reference the preceding paragraphs in Biomedcraft's

Complaint as though fully set forth herein.

109.    In or around 2006-2008, Karl Storz and its representatives, including Yvonne

Bernschneider and Jay Houser, made material and knowing misrepresentations to Dr. Rice and

Dr. Sensenbrenner that Karl Storz would engage in a business relationship with and compensate

Dr. Rice and Dr. Sensenbrenner in exchange for receiving (and using) Dr. Rice and Dr.

Sensenbrenner's bipolar coagulation instrument design knowledge, research, and ideas. Having

endeavored to extract Biomedcraft's design knowledge, research, and ideas, Karl Storz then

subsequently abruptly broke off negotiations without explanation and without responding to

follow up inquiries by Biomedcraft. However, after unilaterally ending the relationship between

Biomedcraft and Karl Storz, Karl Storz developed and sought patent protection for bipolar

suction device designs incorporating the knowledge, research, and ideas provided by

Biomedcraft to Karl Storz.

110.    Karl Storz made material and knowing misrepresentations to Biomedcraft in order

to entice and lure Biomedcraft into entering a confidential relationship and disclosing

Biomedcraft's bipolar suction device design knowledge, research, and ideas to Karl Storz, even

though Karl Storz despite its representations to Biomedcraft otherwise had no intent to engage in

a meaningful or compensatory relationship with Biomedcraft. At least in or around 2006-2008, Biomedcraft relied and acted on Karl Storz' misrepresentations by disclosing its bipolar suction device design knowledge, research, and ideas to Karl Storz.

111.    Karl Storz concealed from Biomedcraft its effort to further develop and patent bipolar suction device designs incorporating Biomedcraft's knowledge, research, and ideas provided by Biomedcraft to Karl Storz. Karl Storz ensured and thus was aware that after extracting Biomedcraft's bipolar suction device design knowledge, research, and ideas, Biomedcraft would not have visibility into Karl Storz's further development of products and processes incorporating Biomedcraft's knowledge, research, and ideas provided to Karl Storz.

112.    By failing to disclose Karl Storz's activities to Biomedcraft in regard to Karl Storz's further development of products and processes incorporating Biomedcraft's knowledge, research, and ideas provided by Biomedcraft to Karl Storz, Karl Storz hoped that Biomedcraft would "go away," forget, not pay attention to, and/or lose interest in Karl Storz's future bipolar suction device designs, including as to any events that would reveal Karl Storz's development of bipolar suction device designs using Biomedcraft's knowledge, research, and ideas.

113.    As a result of Karl Storz's bad faith and fraudulent dealings with Biomedcraft, Biomedcraft suffered the injuries set forth in Biomedcraft's complaint herein and additional damages of an amount yet to be determined, but which will be proven at trial.

## BIOMEDCRAFT'S PRAYER FOR RELIEF

WHEREFORE, Biomedcraft requests that the Court enter judgment in Biomedcraft's favor and grant the following relief:

(a)     Enter judgment in Biomedcraft's favor that Karl Storz has infringed the '272 Patent and that such infringement was willful;

(b)     Enter an order stating that Karl Storz is liable to Biomedcraft for damages in an amount not less than recovery of applicable lost profits, reasonable royalty, treble damages, costs, expenses, and prejudgment and post-judgment interest for Karl Storz's infringement of the '272 Patent, as provided under 35 U.S.C. § 284;

(c)     Enter an order permanently enjoining Karl Storz and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other actors acting in active concert therewith from infringing the '272 Patent, as provided under 35 U.S.C. § 283;

(d)     a declaration that Dr. Rice and Dr. Sensenbrenner are inventors of the '622 Patent;

(e)     a declaration that Biomedcraft is at least a co-owner of the '622 Patent;

(f)     a declaration that Dr. Rice and Dr. Sensenbrenner are inventors of the '455 Patent;

(g)     a declaration that Biomedcraft is at least a co-owner of the '455 Patent;

(f)     a declaration that Dr. Rice and Dr. Sensenbrenner are inventors of the '855 Patent;

(g)     a declaration that Biomedcraft is at least a co-owner of the '855 Patent;

(h)     a declaration that, in the alternative, the '622, '455, and '855 Patents are

unenforceable due to inequitable conduct;

(i)       a declaration that, in the alternative, the '622, '455, and '855 Patents are invalid;

(j)       a judgment that Karl Storz committed fraud in its dealings with Biomedcraft;

(k)       an injunction against Karl Storz and its affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Karl Storz from directly or indirectly asserting that (1) Dr. Rice and Dr. Sensenbrenner are not inventors and that Biomedcraft is not at least a co-owner of the '622, '455, and '855 Patents, or that (2) Karl Storz solely owns the '622, '455, and '855 Patents;

(l)       an order declaring that Biomedcraft is the prevailing party and that this is an exceptional case, awarding Biomedcraft its costs, expenses, disbursements, and reasonable attorney fees under all other applicable statutes, rules, and common law; and

(m)       an order granting such other and further relief to Biomedcraft, including any and all available equitable relief, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Biomedcraft respectfully demands a jury trial on all issues triable to a jury in this action.

Dated: September 9, 2020

Respectfully submitted,

By: /s/ *Wasif H. Qureshi*
Wasif H. Qureshi
wqureshi@jw.com
Texas State Bar No. 24048155
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200

Christopher J. Rourk
crourk@jw.com
Texas State Bar No. 795626
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000

**COUNSEL FOR PLAINTIFF
BIOMEDCRAFT DESIGNS, INC.**